

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 MAY 24  P 12: 55

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EDWARD S. J. JOHNSON** | **CIVIL ACTION** |
| **VERSUS** | **NO.  04-3494** |
| **BURL CAIN, WARDEN** | **SECTION "A" (2)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).



___ Fee_____
___ Process_____
___ Dktd_____
___ CtRmDep_____
___ Doc. No._____

the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED**

**WITH PREJUDICE** as time-barred.

I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Edward Johnson, is incarcerated in the Louisiana State Penitentiary

in Angola, Louisiana.[2]  On December 14, 1995, Johnson and two co-defendants, Edwin

Cedrington a/k/a Edwin Codrington and Terry Vasquez, were indicted by a grand jury

in Jefferson Parish for the first degree murder of Tyrone Shropshire.[3]  The charge was

amended on March 21, 1997, to second degree murder.[4]  The Louisiana Fifth Circuit

Court of Appeal summarized the facts of the case in part as follows:

> Tyrone Shropshire had gotten up from his card game and was attempting to
> bolt the sliding glass door in the kitchen using a wooden stick, when defendant Terry
> Vasquez forced his way in through the kitchen door, carrying a .12 gauge shotgun.
> Vasquez was wearing a red bandana over his lower face and a hooded jacket covered
> his head. Vasquez chased Tyrone up the stairs with the gun. As Vasquez passed
> (five-year-old) Kevin Simmons on the stairs, he hit the boy in the head with the butt
> of the gun. Mr. Pierre ran up the stairs after Vasquez. Kevin Simmons, Lance
> Washington, and each of the Pierres (Mr. and Mrs.) testified that they heard a single
> gunshot after Vasquez and Tyrone ran upstairs.
> After hearing the shot, Mrs. Pierre opened the bedroom door and Vasquez
> pointed the gun at her and said, "Give it up, bitch." Mr. Pierre, who was now at the
> top of the stairs, jumped on Vasquez and struggled with him, while Mrs. Pierre
> retreated and hid inside a closet. Defendants Edward Johnson and Edwin Codrington
> also entered the house by way of the sliding door.  They also wore red bandanas on
> their faces, a signature trait of the 5.9 Bloods gang.  They went upstairs and joined
> in the attack on Mr. Pierre. . . .
>                               * * *

---

[2]Rec. Doc. No. 1, Petition.

[3]St. Rec. Vol. 2 of 11, Indictment, 12/14/95 (amended 3/21/97); Grand Jury Return, 12/14/95.

[4]Id.

Deputy Wayne Hymes of the Jefferson Parish Sheriff's Office testified that he received a call at 7:34 p.m. about an illegal discharge of a weapon at the Tallowtree Lane residence. He responded to the call within minutes, and found fifty or sixty people outside the building. Deputy Hymes entered the house through the front door, and was directed upstairs by a distraught Mrs. Pierre. She led the officer to a bedroom, where Tyrone Shropshire's body lay in a large pool of blood. A window in the room was open, leading Hymes to infer that the victim had tried to escape. The deputy radioed to headquarters for backup officers.

\* \* \*

On the night of the murder, Det. Gurtner showed a photographic lineup to several witnesses individually. Aaron Pierre, Jr., Erica Pierre, and Lance Washington all identified Terry Vasquez as one of the perpetrators. Kevin Simmons viewed the lineup on June 21, 1996, and also identified Vasquez. On November 12, 1995, Gurtner showed witnesses a book of photographs. From that book, Aaron Pierre, Jr. and Erica Pierre identified Johnson and Codrington as perpetrators. On June 21, 1996, Kevin Simmons was shown the book, and also identified Johnson as one of the perpetrators.

Det. Gurtner applied for and obtained arrest warrants for Johnson, Vasquez and Codrington. . . .

\* \* \*

Edward Johnson saw a newscast in which he was named as a suspect in the Shropshire murder, and turned himself in at the detective bureau on November 14, 1998. Det. Gurtner placed Johnson under arrest, and advised him of his rights. Defendant waived his rights and submitted to a tape recorded interview. He stated that he was at his girlfriend's house from about 10:00 or 11:00 a.m. on November 11, until about noon the following day. During that time, he was not near the area where the murder occurred. He stated that Codrington and Vasquez are members of the 5.9 Bloods, but that he himself is not. Johnson's statement was played for the jury at trial.

(footnote omitted) State v. Cedrington, 725 So.2d 565, 569-71 (La. App. 5th Cir. 1998);

State Record Volume 3 of 11, Fifth Circuit Opinion, 98-KA-253, December 16, 1998.

Johnson, Codrington and Vasquez were tried before a jury on September 16, 17,

18 and 19, 1997.[5] The three co-defendants were each found guilty as charged of second

[5]St. Rec. Vol. 6 of 11, Trial Minutes (2 pages), 9/16/97, Trial Minutes (2 pages), 9/17/97; Trial Minutes (2 pages), 9/18/97; Trial Minutes (2 pages), 9/19/97; St. Rec. Vol. 7 of 11, Trial Transcript, 9/16/97; Trial Transcript, 9/17/97; Trial Transcript, 9/18/97; St. Rec. Vol. 8 of 11, Trial Transcript,

degree murder.[6]  On October 2, 1997, Vasqeuz and Codrington were sentenced to life imprisonment without benefit of parole, probation or suspension of sentence.[7]

Johnson later appeared for sentencing on October 16, 1997, at which time his motion for post-verdict judgment of acquittal was denied.[8] After waiver of legal delays, Johnson was sentenced that day to life imprisonment without benefit of parole, probation or suspension of sentence.[9]

On direct appeal, Johnson's appointed counsel raised five assignments of error:[10] (1) He was not fully notified of the offense charged when the State used a short form indictment charging him with first degree murder, which was subsequently amended orally and by hand to second degree murder without a subsection noted. (2) The State failed to prove by sufficient evidence that appellant was guilty of second degree murder. (3) The trial court erred when it determined that Kevin Simmons, a minor, was

---

9/18/97 (continued); Trial Transcript, 9/19/97.

   [6]St. Rec. Vol. 6 of 11, Trial Minutes (2 pages), 9/19/97; St. Rec. Vol. 8 of 11, Trial Transcript, 9/19/97; St. Rec. Vol. 2 of 11, Verdict Form (Vasqeuz), 9/19/97; Verdict Form (Johnson), 9/19/97; Verdict Form (Codrington), 9/19/97.

   [7]St. Rec. Vol. 3 of 11, Sentencing Minutes (Vasquez), 10/2/97; Sentencing Minutes (Codrington), 10/2/97; St. Rec. Vol. 8 of 11, Sentencing Transcript, 10/2/97.

   [8]St. Rec. Vol. 3 of 11, Minute Entry, 10/16/97; Motion for Post Verdict Judgment of Acquittal (Johnson), 10/16/97; Trial Court Order, 10/16/97.

   [9]St. Rec. Vol. 3 of 11, Sentencing Minutes (Johnson), 10/16/97; St. Rec. Vol. 8 of 11, Sentencing Transcript, 10/16/97.

   [10]St. Rec. Vol. 8 of 11, Appeal Brief, 98-KA-253, 6/8/98; State v. Cedrington, 725 So.2d at 568; St. Rec. Vol. 3 of 11, 5th Cir. Opinion, 98-KA-253, 12/16/98.

4

competent to testify. (4) The trial court erred in failing to grant a severance of the defendants for trial. (5) The trial court erred in denying the defense's request to sequester witnesses at a pretrial motion hearing held on October 10, 1996, resulting in prejudice.

On December 16, 1998, the Louisiana Fifth Circuit affirmed Johnson's conviction in the same opinion in which it also addresses Codrington's conviction.[11]   The court remanded the matter for the state trial court to notify Johnson and Codrington of their respective deadlines for seeking post-conviction relief.[12]   The state trial court complied with the directive on December 28, 1998 and issued a notice to Johnson and Codrington.[13]

Johnson's conviction became final 30 days after his conviction was affirmed, January 15, 1999, because he did not seek rehearing or file for timely review in the Louisiana Supreme Court.[14]   Roberts v. Cockrell, 319 F.3d 690 (5th Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process); McGee v. Cain, 104 Fed. Appx. 989, 991 (5th Cir. 2004).

---

[11]State v. Cedrington, 725 So.2d at 583; St. Rec. Vol. 3 of 11, 5th Cir. Opinion, 98-KA-253, p. 36, 12/16/98.

[12]Id.

[13]St. Rec. Vol. 1 of 3, Trial Court Notification, 12/28/98.

[14]Pursuant to La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5(a), petitioner had 30 days from the issuance of the Louisiana Fifth Circuit's opinion to file a timely writ application in the Louisiana Supreme Court, which he did not do.

Johnson later filed an untimely[15] pro se writ application in the Louisiana Supreme Court on January 22, 1999, seeking review of the same five grounds raised by counsel on appeal.[16]  The Louisiana Supreme Court denied the application without reasons on June 4, 1999.[17]

More than one year later, on June 26, 2000, Johnson's counsel filed an application for post-conviction relief on his behalf raising ten grounds:[18] (1) He received ineffective assistance of counsel. (2) He was not fully notified of the offense. (3) The district attorney failed to provide him with exculpatory information. (4) There was insufficient evidence to support the conviction. (5) He was denied a full and complete transcript of the trial proceedings. (6) The trial court erred in qualifying Kevin Simmons, a minor, competent to testify. (7) The trial court erred in failing to grant a severance for trial of the defendants. (8) The trial court erred in failing to sequester the witnesses prior to the pretrial motion hearing. (9) The grand jury foreperson selection process violated the state and federal constitutions. (10) The cumulative errors in the case required reversal of the

---

[15]Id.

[16]St. Rec. Vol. 3 of 11, La. S. Ct. Letter, 99-KO-0190, 1/22/99; St. Rec. Vol. 10 of 11, La. S. Ct. Writ Application, 99-KO-0190, p. iii, 1/22/99.

[17]State v. Johnson, 743 So.2d 1249 (La. 1999); St. Rec. Vol. 10 of 11, La. S. Ct. Order, 99-KO-0190, 6/4/99.

[18]St. Rec. Vol. 4 of 11, Application for Post Conviction Relief, 6/26/00.

conviction. That same day, counsel also filed a motion for more time to file a supplement to the application.[19]

The State responded to Johnson's original application on August 24, 2000. The next day, August 25, 2000, Johnson's counsel filed a supplemental application providing additional argument in support of his claims.[20]

Thereafter, on September 26, 2000, the state trial court denied the application and the related motion, finding that the court previously disposed of all of the claims, except ineffective assistance of counsel and failure to disclose exculpatory evidence.[21] The court denied those claims for failure to specify a factual basis for the claims with particularity.[22]

Johnson's counsel then filed a motion seeking reconsideration by the trial court in light of the supplemental application, which had not been considered in the September 26, 2000 order.[23] On October 18, 2000, the state trial court issued an order denying the application for post-conviction relief and the supplemental application on grounds that

---

[19]St. Rec. Vol. 4 of 11, Motion for Time to Amend and Supplement a Timely Filed Petition for Post Conviction Relief, 6/26/00.

[20]St. Rec. Vol. 2 of 11, Supplemental Application for Post Conviction Relief, 8/25/00.

[21]St. Rec. Vol. 4 of 11, Trial Court Order, 9/26/00.

[22]Id.

[23]St. Rec. Vol. 3 of 11, Motion for Review of Order Denying Claims for Post Conviction Relief, 10/6/00.

7

seven of his claims had been waived because they were known to Johnson at the time of appeal and were not raised, six of these seven claims had been resolved by the Louisiana Fifth Circuit on direct appeal and were barred from further review, the claim regarding the grand jury foreperson selection process was waived for lack of a contemporaneous objection, and the ineffective assistance of counsel claim was without merit.[24]

Johnson's counsel filed a timely writ application in the Louisiana Fifth Circuit seeking review of the same ten claims set forth above.[25]  The appellate court denied the writ application in its decision issued March 13, 2001.[26]  The court barred review of five of the claims pursuant to La. Code Crim. P. art. 930.4(A) because they had already been addressed on direct appeal.[27]  The court also barred review of the claim concerning the grand jury selection process because it was waived by lack of a contemporaneous objection.[28]  The court also determined that the claim concerning an incomplete transcript

---

[24]State Rec. Vol. 4 of 11, Trial Court Order, filed 10/18/00, signed 10/16/00.

[25]The record does not contain a copy of this application.  The filing date appears on the face of the order, St. Rec. Vol. 4 of 11, 5th Cir. Order, 00-KH-1886, 3/13/01, and has been confirmed with the clerk of the Louisiana Fifth Circuit. Although the application was filed more than 30 days after the trial court's ruling, the period set forth in La. App. Rule 4-3, the trial court had set the return date for December 11, 2000.  St. Rec. Vol. 4 of 11, Notice of Intention to Apply to the Court of Appeal, 10/25/00.

[26]St. Rec. Vol. 4 of 11, 5th Cir. Order, 00-KH-1886, 3/13/01.

[27]Id., p. 1.

[28]Id., p. 6.

was moot and waived.[29]   Finally, the court determined that the claims asserting ineffective assistance of counsel and cumulative error were meritless.[30]

On April 12, 2001, Johnson's counsel filed a writ application in the Louisiana Supreme Court seeking review of the same ten claims.[31]  The Louisiana Supreme Court denied the application without reasons on March 8, 2002.[32]  The court also denied counsel's request for reconsideration without reasons on April 19, 2002.[33]

Counsel thereafter filed a petition for writ of certiorari in the United States Supreme Court on July 17, 2002.[34]  The Supreme Court denied the petition without reasons on October 7, 2002.[35]

## II.   FEDERAL HABEAS PETITION

On December 8, 2004, Johnson filed a petition for federal habeas corpus relief seeking relief on grounds of (1) ineffective assistance of counsel, (2) failure of the

---

[29]Id.

[30]Id., p. 5, 7.

[31]St. Rec. Vol. 11 of 11, La. S. Ct. Writ Application, 01-KP-1036, 4/12/01; St. Rec. Vol. 4 of 11, La. S. Ct. Letter, 2001-KP-1036, 4/12/01.

[32]Johnson v. Cain, 811 So.2d 882 (La. 2002); St. Rec. Vol. 11 of 11, La. S. Ct. Order, 2001-KP-1036, 3/8/02.

[33]Johnson v. Cain, 813 So.2d 416 (La. 2002); St. Rec. Vol. 11 of 11, La. S. Ct. Order, 2001-KP-1036, 4/19/02.

[34]St. Rec. Vol. 11 of 11, U.S. S. Ct. Letter, 02-5479, 7/25/02.

[35]Johnson v. Cain, 537 U.S. 918 (2002); St. Rec. Vol. 11 of 11, U.S. S. Ct. Letter, 02-5479, 10/7/02.

prosecution to disclose exculpatory evidence, and (3) failure of the state courts to provide an evidentiary hearing on these issues.[36]

The State responded to the petition, arguing that Johnson's petition is <u>not</u> timely filed and that he has failed to exhaust the claim regarding the denial of an evidentiary hearing in the state courts.[37]

## III.    STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[38] and applies to habeas petitions filed after that date. <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)). The AEDPA therefore applies to Johnson's petition, which, for reasons discussed below, is deemed filed in this court on December 8, 2004.[39]

---

[36]Rec. Doc. No. 1, Petition, Memorandum in Support, p. 1-4.

[37]Rec. Doc. No. 7.

[38]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

[39]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. <u>Coleman v. Johnson</u>, 184 F.3d 398, 401 (5th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1057 (2000); <u>Spotville v. Cain</u>, 149 F.3d 374, 378 (5th Cir. 1998); <u>Cooper v. Brookshire</u>, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In the instant case, the State argues that Johnson has failed to exhaust available state court remedies on one of his claims. The State also argues that the claim is in procedural default because any application for post-conviction relief on the issue would be untimely under Louisiana law. Finally, the State contends that Johnson's petition is not timely. For the following reasons, I find that Johnson has not exhausted his state court remedies, but that the petition is not timely filed under the AEDPA and must be dismissed with prejudice for that reason.

---

Johnson's petition on December 8, 2004, the date on which the filing fee was paid. Johnson, however, signed the petition on December 15, 2004, which was seven days after the filing fee was received by the court. Affording Johnson the benefit of every doubt, the earlier date of December 8, 2004, will be deemed the filing date since it precedes the date placed next to his signature on the petition and is the more favorable date for him.

IV.  EXHAUSTION OF STATE COURT REMEDIES

The State argues that, while Johnson requested an evidentiary hearing in the Louisiana Supreme Court, he did not raise the lower courts' alleged failure to hold an evidentiary hearing as a substantive claim in that court.[40]

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); accord Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Nobles, 127 F.3d at 419.  "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); Rose, 455 U.S. at 519-20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." Id. (citing Picard v. Connor, 404 U.S. 270, 275-78 (1971)) (emphasis added).  "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures.  O'Sullivan

---

[40]Rec. Doc. No. 4.

v. Boerckel, 526 U.S. 838, 845 (1999); accord Duncan v. Walker, 533 U.S. 167, 177-79 (2001).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." Whitehead, 157 F.3d at 387 (citing Picard, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." Id. (citing Nobles, 127 F.3d at 420). Thus, to exhaust his claims in state court, Johnson must fairly present the same claims he urges in this federal court to the Louisiana Supreme Court.

In the 2001 writ application in the Louisiana Supreme Court, Johnson's counsel requested that an evidentiary hearing be held on the 10 claims asserted in the application. There is no claim or argument in that petition challenging the lower state courts' failure to hold an evidentiary hearing before denying his post-conviction claims. The Louisiana Supreme Court therefore has not had a direct opportunity to consider whether the lower state courts themselves erred in failing to conduct an evidentiary hearing.

Thus, Johnson has failed to exhaust available state court remedies as to his claim that he was denied due process when the state courts failed to hold an evidentiary hearing on his post-conviction claims. However, because Johnson's federal petition is clearly time-barred under the AEDPA and must be dismissed with prejudice for that reason, it

is unnecessary both to require state court exhaustion and to address the procedural default defense asserted by the State.

IV.   STATUTE OF LIMITATIONS

Section 2244(d)(1) of the federal habeas statute requires that a petitioner bring his Section 2254 claims, among other things not relevant here, within one year from the date of finality of the judgment of conviction.[41]   Johnson's conviction became final on January 15, 1999, which was 30 days after his conviction was affirmed on direct appeal.

Thus, literal application of the statute would bar Johnson's Section 2254 petition as of January 18, 2000.  Under the federal mailbox rule, his federal petition is deemed filed on December 8, 2004, almost five years after the deadline imposed by the AEDPA,

---

[41]Specifically, Section 2244(d) provides:

(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

and it must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Court of Appeals for the Fifth Circuit has held that the one-year period of limitations in Section 2244(d)(1) of the AEDPA may be equitably tolled, but only in "rare and exceptional circumstances." Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998).

Johnson argues in his petition that his untimeliness should be excused because of his ignorance of the law and his diligent efforts to prove his innocence through the proper channels of exhaustion of his state court remedies.[42]  The United States Fifth Circuit Court of Appeals has long held that "mere ignorance of the law or of statutes of limitation is insufficient to warrant tolling." Felder v. Johnson, 204 F.3d 168, 172 (5th Cir. 2000).  Furthermore, the Fifth Circuit has held that the AEDPA does not provide for an exception to its limitations period for claims of actual innocence. Cousin v. Lensing, 310 F.3d 843, 849 (5th Cir. 2002) (citing Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000)). While Johnson uses the phrase "innocence," no showing of it has been made and his innocence is not an issue raised before this federal court.  His claim of actual

---

[42]Rec. Doc. No. 1, Petition, Attachment to second page six.

15

innocence alone is not sufficient to toll the limitations period merely because the petitioner believes he is entitled to relief.  See United States v. Alexander, 2000 WL 1092618 at *3 (E.D. La. Aug. 2, 2000) (Barbier, J.); Gaines v. Cockrell, 2003 WL 222444 (N.D. Tex. Jan. 28, 2003) (citing Melancon v. Kaylo, 259 F.3d 401, 408 (5th Cir. 2001)).

Johnson has not asserted any reason that might constitute exceptional circumstances why the one-year period should be considered equitably tolled, and my review of the record reveals none that might fit the restrictive boundaries of "exceptional circumstances" described in recent decisions.  See United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal

district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, however, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a <u>properly filed application for State post-conviction or other collateral review</u> with respect to the pertinent judgment or claim is pending <u>shall not be counted</u> toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does <u>not</u> create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. <u>Flanagan</u>, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. <u>Duncan</u>, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

17

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL

609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F.

Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the

meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable

procedural filing requirements,'" such as timeliness and location of filing. Williams v.

Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d

467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary

state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-

20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2)

purposes until "'further appellate review [is] unavailable under [Louisiana's]

procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings

challenging the pertinent judgment subsequently challenged in the federal habeas

petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition

challenging a prior conviction in one county was other collateral review even though

filed as a challenge to a second conviction in a different county); Nara v. Frank, 2001

WL 995164, slip opinion at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty

18

plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

Thus, for the reasons discussed above, the one-year limitations period began to run in Johnson's case on January 16, 1999, the day after his conviction is deemed final. The limitations period ran uninterrupted for 365 days, until January 15, 2000, when it expired. Johnson had no properly filed state post-conviction or other collateral review proceedings pending during that period.

I am aware that Johnson filed a writ application in the Louisiana Supreme Court during that time period on January 22, 1999. However, as noted by the State in its opposition response, that filing was untimely under La. S. Ct. R. X§5(a) because it was filed more than 30 days after the Louisiana Fifth Circuit ruled on Johnson's direct appeal. Under federal habeas corpus law, this untimely filing cannot be considered in the tolling calculation under the AEDPA for the following reasons.

The United States Fifth Circuit Court of Appeals has held that a writ application to the Louisiana Supreme Court which fails to comply with La. S. Ct. R. X§5(a) is not properly filed because it is untimely, and post-conviction review is not pending for

19

purposes of AEDPA's statute of limitations and tolling doctrines. Williams, 217 F.3d at 309-11. Under this doctrine, Johnson cannot benefit from any tolling as a result of his improperly filed and untimely writ application in the Louisiana Supreme Court.

For these reasons, the one-year statute of limitations period applicable to Johnson's federal petition expired as calculated above on January 15, 2000, almost five years before his federal petition was filed.

Even if Johnson's 2000 pro se writ application to the Louisiana Supreme Court was timely filed, and even affording Johnson additional tolling for the 90-day Ott period[43] that would follow, his federal petition would still be untimely. Under this extended alternative calculation, Johnson's conviction would be deemed final 90 days after the Louisiana Supreme Court's June 4, 1999 denial of Johnson's application, or September 2, 1999. The AEDPA one-year limitations period would begin to run on September 3, 1999 and would do so uninterrupted for 297 days, until June 26, 2000, when Johnson's counsel filed an application for post-conviction relief. The application

_____

[43]Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999), cert. denied, 529 U.S. 1099 (2000). In Ott, the United States Fifth Circuit recognized that the 90-day period for filing an application for writ of certiorari with the United States Supreme Court is to be considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A) when a state petitioner proceeds in a timely manner through the state's highest court in the direct appeal process. When a state petitioner timely and properly proceeds to the United States Supreme Court, he is granted finality consideration for the pendency of the United States Supreme Court's review. Geisberg v. Cockrell, 288 F.3d 268 (5th Cir.) (for purposes of the AEDPA, a state conviction becomes final when a petition for certiorari is denied by the United States Supreme Court), cert. denied, 537 U.S. 1072 (2002); Crutcher v. Cockrell, 301 F.3d 656 (5th Cir. 2002); Hoffman v. Louisiana, 768 So.2d 592 (La.) (conviction not final until application for writ of certiorari to U.S. Supreme Court is denied), cert. denied, 531 U.S. 946 (2000).

would have remained pending for tolling purposes until April 19, 2002, when the Louisiana Supreme Court denied reconsideration on the subsequent related writ application to that court. The one-year AEDPA period would have begun to run again on April 20, 2002, and would have done so for the remaining 68 days, when it would have expired on June 26, 2002. Thus, even under this alternative calculation, Johnson's one-year filing period would have expired two and one-half years before he filed his federal petition in this court. I also note that he would in no way be entitled to any tolling as a result of his later-filed petition for writ of certiorari to the United States Supreme Court. See Ott, 192 F.3d at 513 (Section 2244(d)(2) does not allow for statutory tolling as the result of a federal petition to the United States Supreme Court after a conviction is final); Grooms v. Johnson, 208 F.3d 488 (5th Cir. 1999) (applying the Ott rule to disallow statutory tolling for prior federal habeas corpus petition). Nevertheless, even if he were given the benefit of tolling for that petition, his current habeas petition filed more than two years later would be no less untimely under the AEDPA.

Under any method of calculating the tolling period, Johnson's federal petition is untimely. Thus, Johnson's petition must be dismissed with prejudice as time-barred under the habeas statute of limitations provided in 28 U.S.C. § 2244(d)(1)(A).

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the petition of Edward S.J.

Johnson for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED**

**WITH PREJUDICE** as time-barred under the AEDPA.

A party's failure to file written objections to the proposed findings, conclusions,

and recommendation in a magistrate judge's report and recommendation within ten (10)

days after being served with a copy shall bar that party, except upon grounds of plain

error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  Douglass v. United

Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___24th___ day of May, 2005.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

22